Drumm-Flato Commission Co. v. Bank.

DRUMM-FLATO COMMISSION COMPANY, Appellant,
v. GERLACK BANK, Respondent.

### Kansas City Court of Appeals, February 10, 1902.

1. **Money had and Received:** NOTICE: KNOWLEDGE. Where one receives money as the property of A and before paying receives notice by telegram that B claims the money, such notice is knowledge and payment to A will not relieve the liability to B.

2. ————: ASSERTING CLAIM TO: REASONABLE TIME: ESTOPPEL: JURY. Where a bank receives money as the property of A and before payment acquires notice of B's claim thereto, it can not be required to hold said money beyond a reasonable time for B to protect his rights; and if he does not assert his rights within such time he will be estopped. What is a reasonable time is a question for the jury.

3. ————: NOTICE: WAIVER: AGENT. Where a bank receiving money as the property of A learns of a claim of B thereto, it can not relieve itself from liability to the latter by paying the money to A with the consent of the party from whom it received the money.

4. **Trial Practice:** INSTRUCTIONS: REFERENCE TO OTHER INSTRUCTIONS. Where an instruction refers to another instruction in the series, it should specify with reasonable particularity which one.

5. **Money had and Received:** NOTICE. Where a bank receives money as the property of A and receives notice from other parties that the money is B's, it can not relieve itself from liability to the latter because he fails to give notice in his own name of his claim to the money.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,*
Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Young* for appellant.

(1)   The law does not require anything formal in the mode of giving notice in this class of cases.   Notice in this class of cases is the equivalent of knowledge of a fact.   A notice in this class of cases may be actual or it may exist where there is knowledge of such facts as put the party affected upon inquiry.   16 Am. and Eng. Ency. of Law, 790-792; Johnson-Brinkman Commission Company v. Bank, 116 Mo. 558; Clark v. Bank, 57 Mo. App. 277; Eyerman v. Bank, 13 Mo. App. 289, Same v. Bank, 84 Mo. 408; Nonson v. Jacob, 93 Mo. 331; Bank v. Gillespie, 137 U. S. 411; Mayer v. Bank, 86 Mo. App. 422.   (2)   Plaintiff had the full time given by the statute of limitations within which to bring this suit after giving the notices of October 20 and 21, 1899, to defendant bank.   The defendant bank did not have the right to say to the plaintiff, you must sue in Oklahoma, or you must sue within a week or two weeks' or two months. It was the duty of defendant bank to hold this fund after the notice given to it by said telegrams pending investigation. Grand Lodge v. Elsner, 26 Mo. App. 108; Keener v. Grand Lodge, 38 Mo. App. 543; Robards v. Clayton, 49 Mo. App. 608; Franco-American L. & B. Assn. v. Joy, 56 Mo. App. 433.   (3)   The authorities are numerous to the effect that where a bank receives a deposit made by A, and notice afterwards comes from B as owner of the deposit to hold for him, the depositor A can no longer control the payment of the deposit.   Bank v. King, 57 Pa. St. 202; Stair v. Bank, 55 Pa. St. 365; Van Allen v. Bank, 52 N. Y. 1; Frazier v. Bank, 8 W. & S. 18; Falkland v. Bank, 84 N. Y. 145-151; Johnson v. Bank, 56 Mo. App. 257-263; Bank v. Ins. Co., 104 U. S. 54; Bank v. Clopp, 76 N. C. 482; Armstrong v. Bank, 53 Iowa 752; Isom v. Bank, 52 Miss. 902; Bundy v. Monticello, 84 Ind. 119; Gibson v. Bank, 98 N. Y. 87; Swift v. Williams, 68 Md. 237; Armour v. Bank, 69 Miss. 700; Clemmer v. Bank, 157 Ill. 206; Davis v. Bank, 29 S. W. Rep. 926; Anderson v. Bank, 1 N. Y. Sup. 136; Adams Co. v. Bank,

9 N. Y. Sup. 75; 2 Morse on Banking (3 Ed.), sec. 590, p. 928. (4) It results from the foregoing points and authorities that the court erred in refusing plaintiff's instructions 2, 3 and 4 and that the court also erred in giving defendant's instructions 3 and 4.

*Elijah Robinson* and *Charles Swindall* for respondent.

(1) The money in controversy was deposited to Randall's credit in the defendant bank. Prima facie, defendant became his debtor and liable in an action for damages if it should refuse to pay the money to him on demand. Knecht v. Savings Institution, 2 Mo. App. 563; Bank v. Tutt, 5 Mo. App. 342; McKeen v. Bank, 74 Mo. App. 281; 2 Morse Bank and Banking, sec. 458, and cases there cited. (2) Plaintiff neither notified defendant that it claimed the money nor forbade the payment of it to Randall, although it had ample time to do so. (3) In the third subdivision of their brief counsel for plaintiff cite a great many authorities; but we are unable to see any bearing that any one of the cases cited have upon the question involved in the cases at bar.

BROADDUS, J.—This is a suit in the nature of an action for money had and received, to recover the sum of $1,371 and interest. On the nineteenth day of October, 1899, the Globe Live Stock Commission Company, engaged in the commission business at the Kansas City Stock Yards, sold for one Randall, ninety-nine head of cattle, the net proceeds of which sale was the sum of $1,371, which was on said day deposited in the National Bank of Commerce of Kansas City by said commission company with direction to transmit the same to the defendant bank in Oklahoma Territory, to be deposited there to the credit of the said Randall, which was accordingly done. A Mr. Lampe, who was an agent of the plaintiff company, on the afternoon of the day

of sale saw said cattle in the yards at the stock yards, and at once notified Mr. Flato, plaintiff's agent, that in his opinion said cattle were covered by a mortgage the plaintiff held against one R. C. Edmisson. On the afternoon of the same day Mr. Flato saw Edmisson, who was then in Kansas City, and had a talk with him about the cattle, at which time Edmisson informed him that the cattle in fact belonged to Randall. But after a second conversation with Lampe, which occurred the next day, Mr. Flato says he became satisfied that the cattle were included in said mortgage from Edmisson. He thereupon, after finding out from the Globe Commission Company what disposition had been made of the proceeds of the cattle, informed the agent of said company, of his mortgage on the cattle and demanded that it pay the said proceeds to his company. The agent of the Globe company at once telegraphed to the defendant as follows:

"Gerlack Bank, Woodward, O. T.

"It appears that Drumm-Flato's mortgage on Edmisson's cattle includes the cattle shipped by Randall to us. Hold or return amount pending investigation.

(Signed)          "GLOBE LIVE STOCK COM. CO."

It appears, however, on the day before, the twentieth of the month, and on the next day after the sale, the agent of the Globe company having learned of the claim of plaintiff to the cattle, took the precaution at that time of telegraphing defendant that the title to the cattle was questioned without stating by whom. Said telegram is as follows: "The title to the J. F. Randall cattle sold by us is questioned. Hold proceeds $1,371, which we deposited to your credit with the National Bank of Commerce yesterday." Upon receipt of the money the defendant deposited it to the credit of Randall. The money was paid out by defendant on Randall's check on the first day of November next thereafter.

On the twenty-first of October the defendant telegraphed to the Globe company at Kansas City as follows: "We are

advised that we would become responsible. Why don't Coffey garnish?" The Mr. Coffey mentioned, was at that time local agent for the Globe company in the vicinity of Woodward, the *locus* of the defendant. Sometime after the twenty-first day of October, and before the first day of November, Coffey went to Kansas City and saw Flato, had a conversation with him in which he told Coffey that plaintiff company had a mortgage on the cattle in controversy. Coffey asked him to proceed at once to stop this money in the Gerlack Bank, whereupon he said "he would look the business up a little more to satisfy himself he was right, and take proceedings when he satisfied himself that he was right, as he did not think there would be any question, but what he owned the mortgage on these cattle." Then Coffey told him he should take proceedings at once, for when called for (the money) they would be bound to pay it out. Coffey says that "Mr. Gerlack requested me to do that." It was shown that defendant had been informed by Mr. Voorhees, who was the acting agent for the Globe company, that Coffey was its agent in Oklahoma. The money was paid out by the defendant on the advice of said Coffey. Suit was instituted on the thirteenth day of September, 1900.

The petition in the case is to the effect, that the cattle in question were included in the Edmisson mortgage, that they were shipped by Randall to Kansas City, sold by the Globe company, proceeds deposited with defendant bank, and that notice had been given by the plaintiff to defendant of its rights in the premises. Defendant's answer puts in issue the plaintiff's claim to said cattle; admits the reception of said telegram, but alleges that plaintiff, by its failure to take any steps to assert its rights to said cattle or the proceeds, after having been advised and requested to that effect, before defendant paid the proceeds to Randall, it is estopped from asserting any claim thereto as against defendant. There was a

trial before a jury and verdict and judgment had for the defendant, from which the plaintiff appealed.

The plaintiff assigns error of the trial court in the giving of and refusing instructions. Instruction No. 2, asked by plaintiff and refused by the court, fairly represents the theory of plaintiff as presented in this court. Said instruction is as follows: "The court instructs the jury that if you find from the evidence that the cattle which were shipped by Randall to the Globe Live Stock Commission Company were a part of the cattle owned by Edmisson and conveyed by him to plaintiff by the chattel mortgage read in evidence, then the defendant, after the receipt by it of the two telegrams copied in its answer, held the proceeds of said cattle amounting to the sum of $1,371 to and for the use of and as the money of this plaintiff, and defendant could not and did not, after its receipt of said telegrams, become discharged of its obligations to pay said sum to plaintiff, by paying said sum to Randall or to any other person without plaintiff's consent."

Plaintiff insists that the court committed error in refusing said instruction. It insists that the telegram sent by the Globe company informing defendant of plaintiff's claim was notice of its rights, and that such being the case the defendant had no right to pay the money to Randall. The first part of this proposition is true, for it has been held in this class of cases that notice is equivalent to knowledge. Johnson-Brinkman Com. Co. v. Bank, 116 Mo. 558; Eyerman v. Bank, 84 Mo. 408; Mayer v. Bank, 86 Mo. App. 422; Nauson v. Jacob, 93 Mo. 331. The facts incontrovertibly show that the defendant had full knowledge of plaintiff's claim to the cattle in question, or their proceeds. This being conceded, does it follow that the payment, by defendant, of the proceeds of said cattle to Randall after such notice, renders it unconditionally liable to plaintiff for said proceeds under the circumstances as shown by the evidence? We think not.

There were two issues made by the pleadings, viz.: Did

the plaintiff hold a mortgage on said cattle executed by said Edmisson? Was the plaintiff estopped by its conduct in failing after defendant had received notice of its claim for the period of ten days, to assert its said claim to said proceeds? Said instruction ignores the question of estoppel altogether. Plaintiff's contention in this court is that "as the plaintiff had full time given by the statute of limitation within which to bring suit, and the action of the plaintiff in making a full and careful investigation before taking final action, is, it seems to us, praiseworthy rather than deserving of condemnation." We will not do plaintiff's counsel the injustice to say that they mean that the defendant would have been required to have held those proceeds for the statutory period of time, during which the plaintiff might sue. Such a position is absurd in the extreme, and the defendant's responsibility is not to be measured by what the plaintiff might consider sufficient time for it to make the desired investigation as to whether the cattle was included in his said mortgage. Plaintiff's agents and officers knew that the money had been deposited in the defendant's bank to the credit of said Randall, who, as between himself and said bank, had the right to withdraw it at any time. The law steps in and measures the liability of defendant by another and different rule, viz.: If it paid out said money after notice, without allowing the plaintiff *a reasonable length of time* to protect its rights, it was liable to the plaintiff for the proceeds in its hands if shown to belong to the plaintiff. And the plaintiff had, of course, a reasonable length of time to have asserted its rights to the proceeds in question and no more; and this was a question for the jury under a proper instruction. We think the court was right in refusing said instruction.

The court gave, over the objection of plaintiff, instruction No. 4, which is as follows: "The court instructs the jury that if they believe from the evidence in the case that E. E. Coffey was, at and before November 18, 1899, auth-

orized by the Globe Commission Company to represent it,. and act for it, in all matters in which it was interested at Woodward, Oklahoma Territory, and vicinity, and if the jury further believe from the evidence in the case that said Coffey,. as representative of and acting for said Globe Commission Company, subsequent to the time when defendant, the Gerlack Bank received the telegrams set forth in defendant's answer herein, and which have been mentioned in evidence, and prior to the time when said defendant paid the money in controversy to J. F. Randall (if it was so paid by defendant to him) directed defendant to pay said money to said Randall, then the plaintiff is not entitled to recover in this action, and it is your duty as jurors to find a verdict for the defendant."

The giving of this instruction we conceive to be error. It was conceded in defendant's answer, or rather alleged therein, that the Globe company sent the telegrams in question, and that said telegrams notified defendant of plaintiff's claim on said cattle.   The instruction in question is predicated upon the idea that as it was the Globe company that sent said telegrams to defendant, payment of the funds to Randall by the direction of its agent Coffey, discharged it from liability to the plaintiff.   Nothing could be more untenable.   It is hard to realize that this act of the agent of the Globe company, without any authority from the plaintiff, could have the effect of relieving it of the responsibility fixed by the notice included in said telegrams.   The rights of the plaintiff were involved and not those of the Globe company.   If the telegrams had the effect of giving notice (which can not successfully be denied) of plaintiff's rights in the premises, they could not be taken away by the acts of an unauthorized third party.   It was, therefore, error to refuse plaintiff's third instruction which was the reverse of said instruction No. 4 given for defendant, which is not the law.

The modification in plaintiff's fourth instruction was. proper, but it is defective in not specifying with more particu-

larity the instruction to which it referred as constituting an estoppel. All of plaintiff's other instructions refused by the court were properly refused.

Defendant's instructions Nos. 1 and 2 were properly given. They were given upon the issue as to whether the cattle in dispute were included in the Edmisson mortgage to the plaintiff, and they fairly and fully cover that issue. Instruction No. 3, given at the instance of the defendant, was also erroneous. It is as follows: "3. If the jury believe from the evidence in the case that by the exercise of reasonable diligence plaintiff could, after it became aware of the fact that the cattle in controversy had been shipped and sold by the Globe Live Stock Commission Company for and as the property of J. F. Randall and the proceeds thereof sent to the defendant bank for said Randall, have given defendant notice in its own name of its claim to the proceeds of said cattle before the same were paid to said Randall (if said proceeds were paid to him by said defendant), but failed and declined to give such notice because it was looking to R. C. Edmisson to pay his indebtedness to it, and if the jury further believe from the evidence that defendant did pay the proceeds of said cattle to said Randall, then the plaintiff is not entitled to recover, and it is the duty of the jury to find a verdict for the defendant." It was misleading because it required plaintiff to give notice in its own name, for as we have already seen defendant had sufficient notice, or knowledge which is its equivalent.

The defendant argues that as the evidence was so overwhelmingly against the plaintiff on the issue as to whether it had a mortgage on said cattle, the finding of the lower court ought to be affirmed irrespective of any error. There was evidence upon both sides of the issue, and it was a matter upon which the plaintiff has the right to take the judgment of a jury. Butler v. Bank, 143 Mo. 13; Gannon v. Laclede Gas & Light Co., 145 Mo. 502; Kattelmann v. Fire Ass'n,

79 Mo. App. 447; Nat'l Brewery v. Lindsay, 72 Mo. App. 591; Hadley v. Orchard, 77 Mo. App. 141. For the errors noted the cause is reversed and remanded. All concur.